158KJKCB #4

RELATED TO 3:25-CV-489 ET AL.

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In The Matter of:
Pablo David Reyes Ponce

**RECEIVED**

A244086926
Plaintiff,

APR 1 3 2026

**[DETAINED]**

v.

CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

3:26 - cv-673

Attorney General of The U.S., U.S. District's Court-Western of Pennsylvania, DHS Field Officer, ICE Field Officer Philadelphia, Warden on Moshannon Valley Processing Center, Other.. Defendants.

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794)AND RELATED CONSTITUTIONAL AND EQUITABLE GROUNDS

## I. INTRODUCTION

1. Plaintiff Pablo Reyes Ponce ("Pro Se") brings this action to remedy ongoing violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits discrimination on the basis of disability in programs or activities conducted by federal agencies or receiving federal financial assistance.

2. Plaintiff is an immigration detainee currently held under the custody and authority of U.S. Immigration and Customs Enforcement (ICE) within the Department of Homeland Security ("DHS"), where Plaintiff has endured extreme physical and psychological suffering due to deliberate indifference, medical negligence, discriminatory treatment, and prolonged solitary confinement.

3. Despite a stay of removal granted by the United States Court of Appeals for the Third Circuit, Defendants have continued to subject Plaintiff to inhumane and discriminatory conditions, including denial of psychological and psychiatric treatment, **attempts on Plaintiff's life within custody, and defamation and harassment based on perceived personal characteristics and disability status.**

4.   Plaintiff brings this action seeking declaratory, injunctive, and monetary relief for violations of Section 504, the Fifth Amendment's Due Process Clause, and applicable federal standards protecting detainees from cruel, inhumane, or discriminatory treatment.

## II. JURISDICTION AND VENUE

5.   This Court has federal question jurisdiction under 28 U.S.C. § 1331, as this action arises under the laws and Constitution of the United States, including the Rehabilitation Act of 1973, 29 U.S.C. §794.

6.   Venue is proper in this judicial district under 28 U.S.C. § 1391 (e) because the events giving rise to these claims occurred within this District, and the Defendants, acting under color of federal law, maintain facilities and offices here,

7.   Plaintiff has exhausted all reasonably available administrative remedies, including internal facility grievance procedures and written complaints to ICE and DHS Civil Rights and Civil Liberties (CRCL).

## III. PARTIES

8.   Plaintiff is an Ecuadorian national currently detained under ICE authority at Moshannon Valley Processing Center. Plaintiff is a person with a diagnosed mental health disability, including severe depression, post-traumatic stress disorder (PTSD), and anxiety disorder, conditions that substantially limit major life activities including sleeping, thinking, communicating, and self-care.

9.   Defendant DHS is a federal agency of the United States Government responsible for the enforcement of immigration laws and the operation of immigration detention facilities.

10.   Defendant ICE is a component of DHS and operates or contracts with facilities for the detention of immigration respondents, including Plaintiff's detention center. ICE is a "program or activity conducted by a federal agency" within the meaning of 29 U.S.C. § 794(a).

11.   Defendant Moshannon Valley Processing Center, is an entity under contract with ICE to operate a federal immigration detention facility and receives federal financial assistance for that purpose. It is subject to Section 504 and its implementing regulations at 28 C.F.R. § 42.501 et seq.

12.   Defendant's, **Leonard Oddo** is sued in his official capacity as the Office-in-Charge of the Moshannon Valley Processing Center, at which Plaintiff is currently detained, **Lieutenant Geyer**, is sued in his official capacity as the Office-in-Charge of the SMU-DC_PC, **Ranger Hoover** of the SMU and **Nurse Huger** are employees, officers, or medical contractors of ICE or Moshannon Valley Processing Center, acting under color of federal law and within the scope of their employment.

# IV. FACTUAL ALLEGATIONS

13.   Plaintiff has been in ICE custody since approximately 23 Months, pending resolution of removal proceedings.

14.   On 26th August, on 2025, the United States Court of Appeals for the Third Circuit granted a stay of removal, prohibiting Plaintiff's deportation while judicial review remains pending.

15.   Despite this stay, ICE and facility officials have continued to confine Plaintiff under punitive and medically dangerous conditions, disregarding Plaintiff's known and documented mental health disabilities.

16.   From approximately [date] to the present, Plaintiff has been held in solitary confinement exceeding sixty (120) consecutive days, with no indication of when or whether the confinement will end, constituting indefinite isolation.

17.   Defendants have failed to provide meaningful access to psychiatric care, counseling, or prescribed medications, despite repeated written requests and observable deterioration in Plaintiff's condition.

18.   Plaintiff has experienced psychological breakdowns, suicidal ideation, and selfharm tendencies, all of which were known to detention officials who nonetheless failed to intervene or transfer Plaintiff to a medically appropriate setting.

19.   While detained, Plaintiff was the victim of a violent assault and attempted homicide perpetrated by other detainees. Facility staff failed to implement protective protocols, despite prior written warnings to officials about credible threats.

20.    Following the assault, Defendants placed Plaintiff in solitary confinement instead of providing protection or treatment, exacerbating Plaintiff's trauma and violating ICE's own Performance-Based National Detention Standards (PBNDS 2011), which require individualized assessments and mental-health monitoring.

21.    Defendants also engaged in defamation, ridicule, and discriminatory treatment of Plaintiff based on personal and perceived characteristics, including mental disability and personal identity.

22.    Defendants' conduct demonstrates deliberate indifference and systematic neglect toward Plaintiff's medical and mental-health needs, violating the duty of care owed to detainees under the Fifth Amendment and federal disability rights law.

23.    The facility lacks adequate protocols of protection for vulnerable detainees, fails to accommodate detainees with mental illness, and fails to train staff on disability access and Section 504 compliance, in violation of 28 C.F.R. S 39.130 and DHS Directive 065-01.

24.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff's mental and physical health have deteriorated significantly, causing permanent psychological injury, pain, suffering, and loss of dignity.

# V. LEGAL FRAMEWORK AND APPLICABLE LAW

25.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides that:

"No otherwise qualified individual with a disability in the United States shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency."

26.    Regulations implementing Section 504 include 28 C.F.R. Part 39 (for federally conducted programs) and 28 C.F.R. Part 42, Subpart G (for federally assisted programs).

27.    Federal agencies, including DHS and ICE, are required by law to provide reasonable accommodations to ensure access and nondiscrimination for individuals with disabilities.

28.    The Americans with Disabilities Act (ADA), 42 U.S.C. §12131 et seq., though not directly applicable to the federal government, provides interpretive guidance for Section 504 compliance and requires equivalent standards of access and reasonable accommodation.

29.    Under Carlson v. Green, 446 U.S. 14 (1980), federal detainees are entitled to humane conditions of confinement and medical care consistent with the Constitution and federal law.

30.    In Armstrong v. Newsom, 58 F.4th 1283 (9th Cir. 2023), the court affirmed that prolonged solitary confinement of prisoners with mental illness violated federal disability rights, referencing Section 504 and ADA obligations.

31.    The Department of Homeland Security Office for Civil Rights and Civil Liberties (CRCL) has found that ICE violated Section 504 in cases where detainees were denied appropriate medical or psychiatric care due to their disability.

# VI. CAUSES OF ACTION

**COUNT I — VIOLATION OF SECTION 504 OF THE REHABILITATION ACT (29 US. C. § 794)**

32.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31 .

33.    Plaintiff is a "qualified individual with a disability" within the meaning of 29 U.S.C. §705(20) (B)

34.    Defendants DHS, ICE, an Moshannon Valley Processing Center are "programs or activities conducted by federal agencies or receiving federal financial assistance."

35.    Defendants excluded Plaintiff from participation in, denied the benefits of, and subjected Plaintiff to discrimination within federally conducted detention and health programs, solely by reason of Plaintiff's disability.

36.    Such discrimination included:

   A) Failure to provide reasonable accommodations or modifications of policies for Plaintiff's mental health condition;

   B) Placing Plaintiff in prolonged solitary confinement without psychiatric justification;

C) Failing to protect Plaintiff from assault and retaliation;

D) Ignoring medical recommendations and refusing necessary treatment; and

E) Engaging in harassment, defamation, and punitive acts motivated by bias against Plaintiff's mental disability and personal identity.

37. Defendants' actions were intentional, willful, and undertaken with deliberate indifference to Plaintiff's federally protected rights.

38. As a result, Plaintiff suffered and continues to suffer irreparable harm, physical and psychological injury, and deprivation of equal protection and human dignity.

## COUNT II — VIOLATION OF THE FIFTH AMENDMENT (DUE PROCESS)

39. Defendants' actions constitute punishment and deliberate indifference in violation of Plaintiff's substantive due process rights under the Fifth Amendment.

40. The conditions of confinement— including indefinite solitary confinement, denial of mental-health treatment, and exposure to violence — are excessive, arbitrary, and not rationally related to any legitimate governmental purpose.

41. Defendants' conduct shocks the conscience and violates the basic standards of decency and humanity guaranteed by the Constitution.

# VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and grant the following relief:

1. Declaratory Relief —A declaration that Defendants' actions and omissions violated Section 504 of the Rehabilitation Act and the Fifth Amendment to the United States Constitution.

2. Injunctive Relief —An order directing Defendants to:

   a. Immediately remove Plaintiff from solitary confinement;

   b. Provide adequate psychological and psychiatric treatment consistent with professional standards;

   c. Implement proper disability-access protocols and staff training;

    d. Protect Plaintiff from retaliation and violence; and

    e. Monitor ongoing compliance with Section 504 through an independent medical evaluator.

3. Compensatory Damages for emotional distress, pain and suffering, and loss of enjoyment of life, in an amount to be proven at trial.

4. Punitive Damages against individuals defendants whose conduct was malicious, or in reckless disregard of Plaintiff's rights.

5. Attorneys' Fees and Costs under 29 U.S.C. § 794a(b) and 42 U.S.C. S 1988.

6. Any further relief the Court deems just and equitable.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

X _____

PABLO REYES PONCE
A244086926
MOSHANNON VALLEY PROCESSING CENTER
555 GEO DRIVE
PHILISPBURG, PENNSYLVANIA 16866

# Factual Background

- The name of the Petitioner is **Pablo David Reyes Ponce (Pro Se)**
- Since The petitioner have entered in the **United States**, petitioner have been accorded the following immigration Laws on about on **June 26th,2023**,with parole into the United States pursuant to **Section 212(d)(5)** of the Immigrant Act.
- Petitioner is currently being detained by the Department of Homeland Security**(DHS)** at the **Moshannon Valley Processing Center** in **Philipsburg, Pennsylvania.**
- The petitioner have been in immigration detention since **May 16th,2024**
- The petitioner was detained by **DHS** on **May 16, 2024** at approximately 1:35,was arrested without incident by Newark **ICE ERO at 970 Broad St. Newark, NJ 07102**
- Petitioner received a deportation order on **November 19,2024** without scheduled to removal, for not having sufficiently convincing information that the **Ecuadorian Government** and the Persecutor are trying to harm or kill him, and members of a Criminal Terrorist Gangs commit acts of torture or attempted murder. Therefore, the Court denies any release or immigration relief based on the Asylum claims, Withholding removal and **C.A.T.** and will be deported to **Ecuador** in the future based on the charges contained in the Notice to Appear.
- As such, I have been subject to mandatory immigration detention for approximately **24 months** while my removal proceeding as pending
- The Petitioner also has ** **a Pending Motion to Reopen**** before the BIA, filed on December 11,on 2025, which is denied on February 27th ,2026.
- In Parallel, ****a Petition for Review ** is pending before the Third Circuit Case No. 25-2087 filed on June 6, on 2025 which is pending.
- There is currently in force a ** **Stay of Removal** ** issued by the Third Circuit Court of Appeals in Case No. 25-2087,which prohibits **DHS/ICE** from executing the removal order pending judicial review/further proceedings,
- The existing Stay of Removal from the Third Circuit prevents removal while appeal is pending; since the petitioner's detention must be justified solely on reasons of flight risk or danger, not imminence or removal, Because removal is currently stayed, the Justification for custody is significantly weakened.
- The Defendants failure to protect from known threats:

Investigators **Branaf, Long, and Gonzales** were warned about potential attackers but failed to follow protection protocols and acted **with deliberate indifference.**

- Captains and Lieutenants ignored alerts regarding threats on **July 29,on 2025.**
- The **Chief Little, Warden Oddo, and Investigators Branaf** placed the petitioner on solitary confinement with no end date no hearings, constituting **arbitrary and capricious punishment.**
- Petitioner lacked access to case manager, **ICE/DHS** visits, or standard protections protocols
- Petitioner suffered **abuse of power, discrimination, xenophobia, and homophobia** by staff.
- Petitioner has key witnesses, **Wilmin Jimenez** as a victim and witness in **\*\*attempt of petitioner's life\*\***, and **Amauri Sanabia** and Jonathan Flores is witness who see all incident inside the DHS custody
- Petitioner faces \*\***catastrophic, irreparable harm**\*\* if deported, including:
- Without intervention from this **Court,** my detention will continue, as my immigration case is ongoing.
- When a person has ongoing Immigration Proceedings, Immigration Detention without a **Bond Hearing** is considered unreasonably prolonged in violation of the **Due Process Clause of the Fifth Amendment** if such detention exceeds six months.
- **DHS** has not yet conducted a **Bond Hearing** to determine whether my continued detention is justified.
- The immigration detention of the petitioner is unreasonably prolonged because I have been detained for more than **6 months** without a **Bond Hearing**, and the detention of the petitioner will continue without a bond hearing unless this Court grant this relief.
- Once it is established that immigration detention is unreasonably prolonged, the burden shifts to the government to prove by clear and convincing evidence that continued detention is warranted either because the petitioner are dangerous or because the petitioner pose a flight risk.
- **On January 22th, 2026** the DHS transfer the Petitioner to F.C.I. Lewisburg Penitentiary in Lewisburg, Pennsylvania without a notification, where upon arrival didn't receive any facility handbooks, orientation or any other form of rule literature.
- The detention of the petitioner chance to the Civil detention to Criminal Incarceration ,and have several violations of the Human Rights, Prisoner's Right, Due Process,5th,8th& 14th Amendment. such as:
- Due process
- Criminal Incarceration
- Criminal punishment/B.O.P. Punishment under the Immigration Detainees

- Denial Medical & Mental health Treatments
- Without Case Manager
- Without Social Worker
- Without ICE Department
- Without ICE grievance System
- Poor mail system
- Threats by ICE Officer on the detainees
- Threats by the Penitentiary Staff on the Immigration detainees
- DHS/ICE/ experiment on detainees in F.C.I. Lewisburg Penitentiary without and denies the basic standard's for the ICE's detainees, and does not provide the basic standards in the policies of the B.O.P. -PBNDS-NDS-International Law and Convention for the Prisoner (Mandela Rules).
- Upon the arrival to the prison no handbooks or any other rule literature was given out to the detainees nor any orientation took place.
- **On February 4th** the Petitioner made a three way call to help another inmate get a hold of a family member due to the lack of the information and struggles to activate the phone with pac number or knowing how to put money on the books that lead both of the detainees to receive the write up in result.
- Petitioner discovered the new and actual situation of the new detention, and the new accommodation the warden J. Sage and ICE Officer Adams confirmed that all the Immigration detainees are in Criminal Incarceration, and the other inmates in the same Penitentiary have more privileges than ICE's detainees.
- **On March 8th, 2026** we were removed from the J block without notification or judicial order and placed in the van where we were told that we are on the way to MVPC.
- **On March 25.2026 the petitioner received threats for part of the personal(Mrs. Jhons And Miss Passmore and Lamadoo) of M.P.V.C, that denied the access to received legal document to support and continue the own representation in the case**

**\*\* Medical and Mental Health Conditions\*\***

- The Petitioner suffers from diagnosed mental health conditions Post-Traumatic Stress Disorder, Bipolar Disorder, Severe Depression Disorder, Mood Disorder, Anxiety resulting surviving an attempt on life while in detention, and in the past has affected to Torture and Persecution.

- The detention environment, especially if involving solitary confinement, lack mental health protocols, neglect of care, exacerbates his conditions, risk severe deterioration, self-harm, suicide, other irrevocable damage.

- The petitioner also has physical health conditions requirement regular treatment, medication, and monitoring, which the facility has neglected or inadequately provide.

- The Petitioner's severely deteriorated mental health places him at special risk of inhuman or degrading treatment or torture if removed to Ecuador, and/or if kept in continuing indefinite and punitive detention.

- Medical Negligence and Deliberate Indifference, the Petitioner repeatedly sought medical and psychiatric care and was:

1. Ignored
2. Denied Evaluation
3. Ridiculed or punished for requesting help

This constitutes deliberate indifference under the **Fifth Amendment** and is material new evidence

### **Failure to Provide Safety and Secure Conditions****

While detained, Petitioner was held in an environment lacking basic security protocols, including:

- No detainee classification system
- No separation between violent detainees, gang members, and vulnerable detainees
- No preventive supervision despite repeated warnings

This violated **ICE PBNDS 2011** § § 2.4, 2.12, and **NDS Safety and Security standards**, which require classification, separation, and protection of vulnerable populations.

### ** Exposure of a Vulnerable Detainee to Known Risk of Harm****

Petitioner repeatedly reported **credible threats against his life** through the internal Investigators system. Officials including **Chief Little, Warden Oddo, and Investigator Branaf** were placed on notice, establishing a **clear duty of care**.

Despite this:

- No protective custody protocols were applied
- No separation from violent detainees occurred
- Petitioner was left exposed, resulting in a **near-fatal attack risk**

This constitutes **deliberate indifference** and **government acquiescence** under **CAT** jurisprudence. *See **Zheng v. Ashcroft**, 332 F.3d 1186 (9th Cir. 2003).*

## **Excessive and Indefinite Solitary Confinement**

Petitioner was placed in segregation / solitary confinement:

- Without mental health evaluation
- Without a termination date
- Despite known mental disabilities

This violated:

- **PBNDS 2011 S 2.12 (Special Management Units)**
- **ICE Directive 11065.1 on Segregation**
- International norms recognizing prolonged isolation as **inhuman treatment**

Solitary confinement of mentally ill detainees constitutes **cruel, inhuman, or degrading treatment,** relevant to **CAT.** *See **Madrid v. Gomez**, 889 F. Supp. 1146 (N.D. Cal. 1995).*

## **Denial of Basic Human and Legal Rights**

As punishment, Petitioner was denied:

- Communication with family (over 40 days)
- Communication with legal counsel (over 40 days)
- Access to legal materials and an adequate law library

These actions violated:

- **Due Process (5th Amendment)**
- **8C.F.R. S 1003.102**
- **PBNDS Legal Access Standards**

This transformed civil detention into punitive confinement, prohibited under ***Bell v. Wolfish, 441 U.S. 520 (1979).***

## **Medical and Mental Health Negligence**

Petitioner suffers from:

- Bipolar Disorder
- Severe Depression
- PTSD

ICE failed to provide:

- Psychiatric treatment
- Psychological counseling
- Crisis intervention protocols

This constitutes **medical neglect**, violating:

- **PBNDS Medical Care S4**
- **Due Process protections for civil detainees**

Resulting harm included:

- Panic attacks
- Chronic anxiety
- Insomnia
- Digestive disorders
- Severe emotional distress

## **Discrimination, Racism, and Homophobic Harassment**

Petitioner endured:

- Racial discrimination
- Homophobic harassment (Petitioner as Bisexual Person)
- Degrading and humiliating treatment

**ICE** failed to intervene, violating:

- **Equal Protection Clause**
- **Title VI of the Civil Rights Act**
- **PREA standards**

Such abuse under custody constitutes **inhuman treatment with state acquiescence.**

## **Negligent Infliction of Emotional Distress (NIED)**

**ICE's** conduct satisfies all elements of **NIED**:

- Duty of care (civil detention)
- Breach (failure to protect, supervise, treat)
- Causation (direct link to trauma)
- Damages (severe emotional and physical harm)

## **Prolonged Solitary Confinement and Psychological Torture**

**Conditions of confinement and abuse in the SMU (United States)**

While detained in the United States, Petitioner has been subjected to **severe mistreatment** in the **Special Management Unit (SMU)**, including:

## 1. Defamation, Discrimination, Racism, and Homophobia

Petitioner has endured **verbal abuse, defamation, racism, xenophobia, and homophobia** based on sexual orientation by detention facility officers, violating equal protection and due process guarantees.

## 2. Solitary confinement as psychological torture

Prolonged SMU confinement, combined with:
1. Suspension of family communication
2. Extreme isolation
3. Constant intimidation

Has caused **significant deterioration of Petitioner's mental state**, amounting to psychological torture.

## 3. Excessive use of force and pepper spray

On two occasions, **Captain Hampton** authorized the use of pepper spray in the **SMU**, despite knowing Petitioner suffers from asthma and chronic sinusitis, resulting in:

1. Respiratory distress
2. Physical Decompensation
3. Lasting psychological trauma

This conduct constitutes excessive force and deliberate indifference to serious medical needs.

## 4.Systematic abuse by SMU officers

Officers **Lieutenant Geyer, Ranger Olier, Ranger Hoover, and Ranger Myers** engaged in persistent harassment, racism, xenophobia, homophobia, and class-based discrimination, rendering solitary confinement a complete form of torture.

Petitioner was subjected to solitary confinement for no end date, exceeding international and medical standard for psychological safety.

Solitary Confinement created:

- Hallucinations
- Disorientation
- Severe Despair
- Exacerbation of Trauma
- Heightened Suicide Risk

This was Unknown during earlier proceedings.

The definition of **Torture** includes acts by public officials or with official acquiescence that inflict sever pain or suffering, including **"Mental Pain"**, or denial of necessary medical care, when such suffering is intentionally inflicted or the result of discrimination or neglect of vulnerable individuals, After the attack, the petitioner was placed in **Solitary Confinement** for **over 120 days, with** no medical or psychological care provide despite the petitioner severe injuries and existing mental health conditions, including **PTSD, Bipolar Disorder, Severe Depression**. The confinement caused further **Psychological and Emotional Harm**, Leading to deterioration in the mental health of the petitioner.

## ** Trauma, Torturer Risk, and Persecution**

**A)The Petitioner endured an assassination attempt/violent attack inside immigration detention, which traumatized him and places him at ongoing risk;**

**Incident Description and sequence of events:**

On **September 2,2025**,around 8:00 PM, upon returning from the afternoon recreational period at Block B(Bravo Unit),The Petitioner, **Pablo Reyes**, was brutally attacked by an inmate, Salvadoran Citizen named **Rodrigo** (a.k.a "R5" or "**Lagrima**"),who is an active member of the violent **MS-13** criminal gang. The attack, which occurred in the hallway near the entrance to housing units **B1** and **B2**,involved **Rodrigo** attempting to murder me using a **sharp weapon**, resulting in **six stab wounds** to my abdomen, causing both **physical and psychological harm.**

During the attack, **Wilmin Jiminez** with Alien Number **A#206194765,** who witnessed the assault and attempted to intervene, also suffered **psychological trauma** as he risked his life to prevent the assault from being fatal. Despite prior warnings given to authorities, my personal safety was not safeguarded, and the attack was allowed to proceed, and **Amuri Sanabia** with Alien Number **A#087466312** who see all the incident and lack of respond by the staff inside the facility.

During the **attack was a coordinated effort,** planned by several individual within the facility. The leadership of the **MS-13** and **Paisas** gangs were involved, including Salvadoran citizen **Cristian Machuca** from B5 (a.k.a "Chele"Leader of the Paisas Gang),a Mexican citizen **Uriel Tapia** from B2 (a.k.a. "Cochiloco" or "Matequilla" member of the Paisas Gang), a Mexican citizen **Carlos Alvarez** from B6(a.k.a. "Sinaloa" member of the Paisas Gang),a Salvadoran citizen **Usbin** from A3 (a.k.a. "Pelon" Leader of the MS-13),and and **Rodrigo**(a.k.a. "R5" or

"Lagrima"),the individual who carried out the attack, This was a premeditated assault designed to harm or kill me, which was documented by security cameras of the facility.

Prior to attack, **on July 19,2025**, I had reported to the facility's lieutenants and captains the potential for a future altercation, providing details regarding the aggressors and their bed and cell number, This information was **ignored and neglected** by the authorities which directly resulted in the attack.

## **Attempt Again Respondent's Life  & Failure to Protection**

The prior assault and attempt on Petitioner's life while in U.S. detention reflects a pattern of serious harm, suggesting that Petitioner's removal would place him in a similarly or even more precarious situation

Petitioner suffered or narrowly escaped:

- Physical Harm
- Threats of Death
- Violence enabled by "officer's negligence
- Placement in dangerous units
- Attempted to murder to the Petitioner's life

Such events directly bear on trauma, fear of return, CAT eligibility, and moral character for Cancellation.

## **Persecution in Ecuador**

- The petitioner was targeted and attacked by the criminal gang **"Neta"** in Quito, Ecuador, specifically at a venue in southern Quito.
- The persecution was based on his tattoos, which were interpreted as indicators of gang membership.
- His immediate family — partner and mother of his child — have received **threats, harassment, and media-based attacks,** demonstrating the structural and widespread risk faced by the petitioner and his family.

## **Risk of arbitrary incarceration under false and malicious charges**

Petitioner faces a **real and immediate risk** of being detained in Ecuador based on **fabricated criminal accusations,** previously dismissed or deemed unsupported by the Ecuadorian Prosecutor's Office, but subject to reactivation through corruption, abuse of authority, and criminal influence.

Such detention constitutes **state-enabled persecution and psychological torture**.

### **Exposure to Torture, Extortion, Kidnapping, and Death in Prison**

Ecuadorian prisons are widely documented as being under the control of organized criminal groups. Individuals accused under false pretenses are particularly vulnerable to:

- Physical and psychological torture
- Extortion of family members
- Kidnapping within prison facilities
- Extrajudicial killings

Petitioner has already survived an attempted murder during prior incarceration, establishing past torture and a presumption of future torture under **8 C.F.R. § § 1208.16— 18**.

### **Denial and severe limitation of psychiatric care in Ecuador**

Petitioner suffers from serious psychiatric and psychological conditions, supported by:

- Letters from family members
- Statements from witnesses
- Opinions from attorneys practicing in Ecuador

In Ecuador:

- Prisons lack adequate psychiatric services
- Public hospitals suffer from chronic shortages of medication and specialists
- Detained individuals are routinely denied continuity of mental health treatment

Removal would cause abrupt termination of essential psychiatric care, constituting cruel, inhuman, and degrading treatment under **CAT**.Under the Foreign Affairs Reform and Restructuring **Act of 1998 (FARRA)**, and the United States' obligations under the **Convention Against Torture**, codified at **8 C.F.R. 1208.16-18**, the United States may not remove a person to a country where it is more likely than not that they would be subjected to Torture. Case law has recognized that individuals with severe mental illness maybe entitled to **CAT** protection if:

- **Mental Illness is stigmatized or criminalized in Ecuador if removal.**
- **Medical or Psychiatric Facilities are abusive or inhumane.**
- **Ecuador don't have Metal Health Program in Prison**
- **There is a credible risk of suicide, abuse or forced institutionalization under cruel conditions.**
- **The persecutor try to kill the petitioner one more time**

- **Family of the petitioner continue received threats and hate acts for part of the persecutor**
- **Private the freedom and entry in prison for false charges and injustices judgment**

Courts such as *Matter of J-E-, 23 I&N Dec. 291 (BIA 2002)* and subsequent decisions permit CAT protection for non-citizens facing harm **Not necessarily motivated by intent to punish**, but due to conditions of confinement, healthcare denial, or institutional violence.

### **Changed Personal Circumstance and New Equities**

Petitioner has developed new equities, such as:
- Worsening health
- U visa eligibility due to crimes suffered in custody
- Extreme-hardships factors

**B)The petitioner fears persecution and torture if removed to his home country Ecuador;**

The deportation of the Petitioner will result in Irreparable Hardship, as detailed above in the I-589 application and declaration, If the petitioner is deported, the petitioner will be sent to a country where fears persecution and torture, the petitioner fear that will be unjustly Imprisonment and Torture, murder by Gangs members or individuals who are involved with my persecutor **(Lissette Pardo Jijon).**

If removed the petitioner will face in Ecuador, Irreparable harm is being caused, as the petitioner is subjected to political persecution in the country. The Judicial System and the police are being used as tools of torture and persecution, all his rights are being violated, and the terrorist groups are clearly trying to end his life.

This constitutes evade of Harassment statement and torture, and evidence present was not properly considered and analyzed including statement from his lawyer in Ecuador, which indicate the persecution he suffered, The legal documents from Ecuador Public Prosecutor's Office, which clearly reflect the petitioner is complete innocence and dismissed the case for lack of clearly evidence, revealing no criminal record or convictions in Ecuador or United States

Lack attention to his mental health history which clearly reflects the harm and treatment, after surviving these event's, His medical facts, evidence and testimony clearly demonstrate the torture the petitioner endured in this country and in Immigration detention.

Removal would cause Petitioner to suffer immediate and irreparable harm, including:

1. Risk of persecution or Harm in Ecuador,
2. Prison Massacres,
3. Gang control of Prisons,
4. Kidnapping,
5. Targeted killings,
6. State loss of Control,
7. Conditions amounting to torture for vulnerable individuals like petitioner,
8. Ineligibility to adjust status or pursue other relief if removed,
9. Once removed, Petitioner may lose the opportunity to pursue meaningful appellate review, rendering the Petition for Review moot,

Torture, inhuman and degrading, in violation of the Convention Against Torture[**CAT**]

Threats to my life and freedom based on false accusation and the fabrication of false accusation a red notice [**INTERPOL**] has been issued without due process, with a criminal record and malicious charges, which has led to trial and prosecutions against the petitioner, putting the petitioner life and the family of the petitioner at risk, causing Psychological trauma, it affected the mental state and caused irreparable damage to the left hand and arm the petitioner.

The persecution was perpetuated by lawyer **"Lissete Pardo Jijon"**, who influences third parties and uses Ecuador's judicial corrupt system as a tool of persecution and torture, with the collaboration and connection of the cartel and the terrorist group **"Los Choneros"**.

Lack of effective legal protection or resource in the country of origin, retaliation for speaking out or seeking justice, Some examples of threats I have faced include:

- In 2021, the petitioner was arrested on trumped up charges and subject to a sham trial because the petitioner accuser(Lissete Pardo Jijon) was a close friend of the judge, As a result, the petitioner was in prison for 22 days, implicated in an attempted murder, and stabbed multiple times leaving the petitioner with irreversible injuries, ans several psychological traumas after surviving this event.
- In the final of 2021. the petitioner was forced to leave of the your home**(Quito)** and endured persecution until him reached the city of **Cuenca, Ecuador**, where suffered an attempted murder and received multiple injuries and stitches.

- The media campaign via social media aimed at discrediting him, which has affected the social and professional life of the petitioner. The petitioner have been the victim of discrimination, defamation and disclosure of the personal information. Moreover, the petitioner have been a victim of acts of hatred, violence, torture and persecution that have not only affected the petitioner, but also the family, especially the petitioner son's mother **Andrea Chavez Parraga.**
- The family of the petitioner was directly affected him, persecutor threats and harassment, she used intimidation and extortion, which led to conflict and family disintegration, even leading to the loss of custody of the petitionerson **"Salvador Reyes"**
- Local authorities were manipulated and corrupt, so **Ecuador** and Judicial System did not grant the petitioner many procedural rights, and, the petitioner become a victim and witness to corruption and manipulation of judicial process that were exploited to benefit the highest bidder.
- The Petitioner have been diagnosed with **Bipolar Disorder, Severe Depression, Post Traumatic Stress Disorder,** and caused by the persecution and torture the petitioner suffered.
- These threats are credible, well documented, and ongoing, if deported, the petitioner would be at risk of suffering irreparable harm, in violation of **Article 6,7,9,9 and 14 of the International Covenant On Civil and Political Rights (ICCPR)** and other instruments of international law.

**C)The petitioner immigration removal is based in part on a "Red Notice " which is malicious and politically motivated, intended to persecute and torture, not a legitimate criminal basis:**

The petitioner fled of the home country in 2022 due to severe persecution based on the false accusation and manipulation, in which was issued a red notice (**INTERPOL**) in bad faith, without due process. These accusations and incidents against the petitioner were orchestrated using the corrupt judicial system and the Ecuadorian National Police as instruments of torture and persecution. Furthermore those who persecute the petitioner and torture him (**Lissete Pardo Jijon**) used their own connections and relationships, **first,** she promoted his status as a criminal lawyer and ex-former government official with ties to prosecutor's, judges, government officials, political and national police, **second,** she violently exploited his ties to **Ecuador's "Los Choneros"** cartel and terrorist group. Not only has there been a clear intention to kill him and mute him on several occasion, but him have also been the victim of a campaign of discrimination, defamation, disclosure of personal information, hate acts against him and the family of the petitioner, threat to him and the family, this caused psychological

trauma and irreparable, and the physical damage to the left hand and arm of the petitioner. Since the arrival in United States, him have sought international protection through Asylum, CAT, and Withholding removal, but the case has been either denied and ignored the facts. Currently, the petitioner is subject a final order to deportation, and him fear for the life and safety if returned to Ecuador.

**\*\*Tattoos, Profession, And Improper Findings\*\***

In November 19,on 2024, The Immigration Judge acknowledged and explicitly fount that:

a) Petitioner's tattoos as **directly related to his profession as a tattoo artist,**

b) Petitioner does **not belong to any criminal gang or terrorist organization** in Ecuador,

c) His tattoos are a reflection of **lifestyle and artistic expression,** not criminal affiliation.

Despite this factual finding, the "I.J." issued **irrelevant, inappropriate, and discriminatory commentary, suggesting** that Petitioner should:

1. Remove his tattoos, and

2. Change his profession

Such commentary constitutes **discrimination, classism, xenophobia, and implicit racial bias,** and violates:

- **Due Process (Fifth Amendment)**
- **Equal Protection Principles**
- **Neutral adjudication standards**

Changing professions or removing tattoos **does not mitigate the risk of persecution,** nor does it negate government-sanctioned targeting of tattooed individuals in Ecuador.

**\*\*Media Lynching, Torture, and Criminal Persecution in Ecuador\*\***

Petitioner has been subjected to systematic persecution and psychological torture, including crimes recognized under Ecuador's Comprehensive Organic Criminal Code (COIP):

- **Article 47 Aggravating Circumstances** including:
  1. Multiple perpetrators
  2. Increased harm
  3. Exploitation of personal and professional vulnerability
  4. Multiple victims
  5. Crimes committed from detention facilities
- **Article 151** – Physical and Psychological Torture
- **Article 154** Intimidation
- **Article156_** Incitement to Suicide

- **Article 157** – Psychological Violence against Family Members
- **Article 176** -Discrimination
- **Article 177**- Hate Crimes
- **Article 180** -Illegal Dissemination of Restricted Information
- **Article 182**- Defamation

These acts constitute psychological torture under:
- **Convention Against Torture (CAT), Articles 1, 2, and 16**
- **8 C.F.R. § 1208.18**

Neither the "I.J." nor the "BIA" properly analyzed or weighed this evidence.

**Prior Detention, Attempt on Life, and Irreversible Harm****

Petitioner was **falsely detained for 22 days** in Ecuador based on **fabricated charges**, orchestrated through **corruption, abuse of power, and political influence** by his persecutor, **"Lissette Pardo Jijon"**, an active member and collaborator of the terrorist organization **"Los Choneros"**.

**On August 5, 2021,** while detained, Petitioner suffered an **attempt on his life** by members of "Los Choneros" resulting in:

- **Permanent damage to his left arm and hand**
- Severe psychological trauma
- Long-term mental health deterioration

Petitioner was confined in the Matilde Hidalgo prison, designed for **20 individuals**, but housed with **68 prisoners**, including violent offenders.

Conditions included:

- No adequate food, water, or medical attention;
- No light, ventilation, beds, blankets, or hygiene products;
- No communication with family or legal counsel;
- Exposure to gang-controlled prison environment, including firearms, knives, drugs, prostitution, and violent crimes.

During detention, Petitioner **suffered a deliberate attack with knives,** causing irreversible injury to his Left arm and hand, and received delayed **medical care, increasing risk of infection**. Petitioner endured psychological trauma, including **PTSD and severe depression**, requiring psychiatric and psychological treatment. Petitioner's persecutor obtained Petitioner's cell phone during detention, leading to malicious disclosure of personal information, resulting in media lynching, defamation, and loss of livelihood, closing all opportunities for work and artistic exposure in Ecuador.

**\*\*Ongoing Threats and Persecution\*\***

After release, Petitioner continued to **face gang threats from criminal organizations**, including Los Choneros, forcing multiple relocations. Petitioner fled Ecuador and endured violent events during migration, including:

- **Robbery, physical assaults, and witnessing killings;**
- **Sexual abuse and kidnapping** by human trafficking gangs in Guatemala and Mexico;
- Exposure to natural hazards in the **Darien jungle** for seven days, becoming lost and endangered

This satisfies the **CAT** standard of past torture, creating a presumption of future torture.

**\*\*Country Conditions and State-Sanctioned Persecution\*\***

In **January 2024**, Ecuador declared a **nationwide state of emergency** under President Daniel Noboa, acknowledging:

- Presence of at least **22 organized criminal gangs**
- Collapse of prison control
- Militarization and mass detentions
- Targeting of individuals with tattoos alleged to indicate gang affiliation

Petitioner belongs to a **Particular Social Group:**

*"Tattooed individuals perceived as gang members in Ecuador"*

Government policy now explicitly exposes such individuals to:

- Arbitrary detention
- Torture
- Extrajudicial punishment

**\*\* Changed Country Conditions In Ecuador\*\***

Evidence shows **catastrophic deterioration** since petitioner's last hearing:

- Prison massacres
- Gang control of prisons
- Kidnapping
- Target killings
- State of loss control
- Conditions amounting to torture for vulnerable individuals like petitioner

Petitioner will **more likely than not face** torture if removed.

**\*\*Prosecutorial Findings of Innocence Ignored\*\***

The Ecuadorian Prosecutor's Office formally concluded there was insufficient evidence to bring charges against Petitioner. Key findings include:

- Multiple witnesses confirmed **consensual sexual relations**
- Absence of physical violence
- No criminal record (certified by Ministry of Interior)
- Prosecutor **Tania Moreno** concluded no basis for prosecution

These findings were ignored or minimized by the "IJ" and "BIA"..

### ** Ineffective Assistance of Counsel**

Prior counsel failed to:

- Present critical witnesses
- Properly organize evidence
- Maintain consistency in asylum theory
- Correctly identify persecuting criminal organization

This constitutes **ineffective assistance of counsel** under **"Matter of Lozada"** and violates due process.

### **Relevance to CAT and Non-Refoulement**

Petitioner previously endured identical abuses in Ecuadorian prisons, including:

- Lack of protocols
- Violence
- Mental health neglect

The **repetition of these abuses in U.S. detention demonstrates**:

- Heightened vulnerability
- Likelihood of future torture if returned
- Psychological retraumatization

Under **CAT**, the inquiry includes **cumulative harm and retraumatization**, making removal unlawful.

### **Procedural Failures in U.S. Immigration Proceedings**

The Immigration Judge and BIA failed to consider:

- The severity of torture in Ecuador;
- The psychological impact of 22 days of preventive detention and subsequent persecution;
- Threats from organized crime, including the ability of persecutors to continue targeting Petitioner;
- Systemic failures in Ecuador's justice system.

Petitioner therefore denied full and fair consideration of CAT and non-refoulement protections.

## **Professional and Cultural Contributions**

- The Petitioner is a Tattoo Artist with more **15 years** in the art-world
- Petitioner collaborate and supporting, different areas of art, for more than **22 years**, around different countries of America,
- The petitioner is a recognized **cultural manager and artist** in Ecuador, with participation in radio programs (**Radio Transgresor Jatarishum 99.3, Gente de Oi! 88.1,Cordinadora Antifascista Radio Online(Madrid)**) and cultural and artistic movements (**Aji de Piedra collective, True Tattoo Convention, Semana del Rock 2003, Quitu Raymi 2005-2009**) in Ecuador.
- The Petitioner is a Professional Cheff supporting the gastronomy in Ecuador

His cultural contributions demonstrate a **long history of positive societal engagement**, which should be considered in mitigation against deportation.

## ** No criminal Record/Character and Flight Risk**

- The petitioner has **No Criminal History in Ecuador and none in the U.S.** This strongly militates in favor of release and against detention.
- The petitioner has demonstrate compliance with prior immigration proceedings and has strong community ties.
- There is is no basis to consider him a danger to the community.
- Release under bond or supervision will assure appearance.

## **Abusive issuance of an Interpol Red Notice**

The Interpol Red Notice issued against the Petitioner:

- Lacks valid criminal charges;
- Was not properly evaluated under Interpol standards;
- Was issued **under the influence of third parties**;
- Constitutes a **direct act of retaliation** by the accusing party after losing the underlying case.

This misuse of Interpol mechanisms constitutes **transnational persecution**, widely recognized as incompatible with international human rights law

## **Negligence and U.S. Government Responsibility**

### 1. Negligent Infliction of Emotional Distress (NIED):

The government allowed the petitioner to be assaulted and exposed to dangerous conditions, causing **severe physical, psychological, and emotional harm**.

**2. Failure to Follow Protocols:**

The government violated **PBNDS/NDS/ICE** standards, including:
i. Supervision and separation of violent detainees

ii. Adequate medical and psychological care

iii. Protection from abuse and assault

**3. Direct Causation:**

Negligent actions by federal personnel (Warden Oddo, Chief Little, Investigator Branaf) **directly contributed to the harm** suffered by the petitioner.

## **Eligibility for U Visa**

- Under U.S. law, victims of crimes that occur **within U.S. territory** and who suffer substantial **physical or psychological abuse** may qualify for a **U Visa.**

- The petitioner's experience constitutes **simple and aggravated assault under the Pennsylvania Penal Code**, satisfying eligibility criteria for this immigration benefit.

## ** Prejudice/Irreparable Harm from Continued Detention**

- Continued detention while the Motion to Reopen, Third Circuit review, Civil Action, and other proceedings progress risk irreversible damage to the Petitioner's health, psychological stability, and life.
- The delay in resolving detention status may stretch for many months or more, making release after the fact inadequate.

## **Stay of Removal as Protective Mechanism**

- The existing stay of removal from the Third Circuit prevents removal while appeal is pending; hence the petitioner's detention must be justified solely on reasons of flight risk or danger, not imminence or removal.

- Because removal is currently stayed, the Justification for custody is significantly weakened.

## **Interplay with the Motion to Reopen**

- In the BIA grants the Motion to Reopen, the basis for detention or the removal order, may shift, thus custody decisions made preemptively are premature or unnecessary.
- The court should regard the outcome of the Motion to Reopen as a central factor in any custody decision.

### **Balance of Equities & Public Interest**

- The equities favor release: humane treatment, health preservation, due process, avoidance of irreparable harm.
- The Government's interest in custody/detention must be weighed against the risk of harm; it cannot justify indefinite detention in the face of serious medical risk.
- The Public interest in fair and humane immigration enforcement includes granting bond/custody review when detention is harmful or abusive.

### **Removal would render appellate rights meaningless**

- If removed, Petitioner's pending appeals would become **practically and legally ineffective,** satisfying the irreparable harm standard under **Nken v. Holder** and related case law.

# CERTIFICATE TO SERVICE

I, **Pablo Reyes**, do hereby certify that a true and correct copy of the foregoing has been

placed in the out going mail system of the facility in which I am detained, via legal mail overnight

Federal Express

Respectfully Submitted

X _____

PABLO REYES PONCE

A244086926

MOSHANNON VALLEY PROCESSING CENTER

555 GEO DRIVE

PHILISPBURG, PENNSYLVANIA 16866